UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS D. ISON,

    Plaintiff,

v.

CITY OF DETROIT, ET AL,

    Defendant.

_____/

Case No. 18-12729

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**ORDER DENYING PLAINTIFF'S REQUEST FOR ADDITIONAL TIME TO SERVE [80], DISMISSING ALL CLAIMS AGAINST DEFENDANT BRIAN HANKS, GRANTING DEFENDANT KEVIN JEROME'S MOTION FOR SUMMARY JUDGMENT [76], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [73], DENYING PLAINTIFF'S MOTIONS TO REINSTATE/RESTORE CHARGE OF DISCRIMINATION [68, 69], GRANTING PLAINTIFF'S MOTIONS TO FILE TRANSCRIPTS [70, 72, 74], AND DIRECTING ENTRY OF JUDGMENT CLOSING CASE**

On August 31, 2018, Plaintiff, Thomas D. Ison, commenced this action under 42 U.S.C. § 1983 for excessive force and unlawful detention against Defendants, the City of Detroit, the Detroit Police Department ("DPD"), and DPD Officer Kevin Jerome. (ECF No. 1). In the three years since, the City of Detroit and the DPD have been dismissed, and Plaintiff has amended his complaint on several occasions while attempting to identify the appropriate DPD officer Defendants. (ECF No. 14; ECF No. 17; ECF No. 29; 63). Most recently, Plaintiff filed a Third Amended Complaint [63] re-naming Officer Jerome, who had previously been replaced with a different officer, as well as naming for the first time Officer Bryan Hanks. Before the Court

1

are a plethora of motions by Plaintiff as well as cross Motions for Summary Judgment [73, 76]. For the reasons articulated below, Plaintiff's Request for Additional Time to Serve [80] will be **DENIED**, Plaintiff's claims against Defendant Hanks will be **DISMISSED**, Defendant Jerome's Motion for Summary Judgment [76] will be **GRANTED**, Plaintiff's Motion for Summary Judgment [73] will be **DENIED**, Plaintiff's Motions to Reinstate/Restore Original Charge of Discrimination [68, 69] will be **DENIED**, Plaintiff's Motions to File Transcripts [70, 72, 74] will be **GRANTED**, and a **JUDGMENT** will be entered to **CLOSE** this case.[1]

## BACKGROUND

Plaintiff's claims stem from DPD's pursuit and arrest of several individuals who were suspected of being in involved in a narcotics transaction on the evening of September 2, 2016. (ECF No. 74, PageID.674; ECF No. 76-7, PageID.864). The suspected purchaser, Carrie St. Charles, was Plaintiff's girlfriend at the time. (ECF No. 74, PageID.674).

St. Charles and Plaintiff were observed walking down Yacama Ave. in Detroit, Michigan, by DPD Sergeant Ahmed Haidar, who had received a complaint of street level narcotics sales and was conducting surveillance. (ECF No. 71,

---

[1] The Court finds the instant motions suitable for determination without a hearing in accordance with L.R. 7.1(f).

PageID.482, 485). Plaintiff had picked St. Charles up from work, as was their custom. (ECF No. 74, PageID.681). As the pair walked by, Sgt. Haidar profiled St. Charles as a drug user based on "her look, her skin features," the character of the neighborhood, and his experience in law enforcement. (ECF No. 71, PageID.489, 515-19). Eventually, he observed St. Charles stop in front of a house he believed to be vacant. (*Id.* at 490-91). Plaintiff continued down the sidewalk about five yards and stopped in front of the house's driveway. (*Id.* at 491; ECF No. 74, PageID.676). St. Charles then proceeded to engage in a narcotics transaction through a fence in front of the house. (*Id.* at 492-99; ECF No. 74, PageID.659-63).

    Sgt. Haidar immediately alerted DPD officers, who arrived on the scene moments later. (ECF No. 71, PageID.502-03). When St. Charles realized law enforcement officers were moving in, she ran up the driveway and into the backyard, where she attempted to dispose of the narcotics she had just purchased. (ECF No. 71-1, PageID.578; ECF No. 74, PageID.663-65). Defendant Officer Jerome pursued St. Charles into the yard and allegedly knocked Plaintiff, who was still standing in the driveway, to the ground. (ECF No. 71-1, PageID.579, 590; ECF No. 74, PageID.666, 677). Officer Jerome has no recollection of running into Plaintiff while giving chase to St. Charles. (ECF No. 76-4, PageID.847).

    Plaintiff was subsequently handcuffed to the fence in front of the house. (ECF No. 71-1, PageID.613; ECF No. 74, PageID.666, 678, 691). He claims the officer

3

who handcuffed him was Defendant Officer Hanks. (Third. Am. Compl. ¶ 11). Plaintiff was not given an explanation as to why he was being handcuffed, but his person was searched, and his identification was checked. (ECF No. 74, PageID.678). After about twenty minutes, Plaintiff was permitted to leave the area. (*Id.* at 693). St. Charles and several others were arrested. (*Id.*; ECF No. 76-7, PageID.864-69).

### DISCUSSION

I. **Plaintiff's Request for Additional Time to Serve [80] is Denied and All Claims Against Defendant Bryan Hanks are Dismissed**

Officer Hanks was named for the first time in Plaintiff's Third Amended Complaint [63] on February 16, 2021. On February 19, 2021, the City of Detroit Law Department notified Plaintiff that it was not authorized to accept service on behalf of Officer Hanks, but would be amenable to arranging a meeting where Officer Hanks could be served. (ECF No. 66). Plaintiff failed to follow up on this offer. (ECF No. 78). Now, more than six months later, Plaintiff has still failed to properly serve Officer Hanks, and is requesting additional time to complete service. (ECF No. 80). But because Plaintiff's claims against Officer Hanks are barred by the three-year statute of limitations on § 1983 claims, granting Plaintiff additional time would be futile. *See McCune v. Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988); *see also Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). Accordingly, his Request [80] is **DENIED**, and all claims against Officer Hanks are **DISMISSED**.

II. **Defendant Kevin Jerome's Motion for Summary Judgment [76] is**

**Granted and Plaintiff's Motion for Summary Judgment [73] is Denied**

**A.     Standard of Review**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A 'material' fact is one that 'might affect the outcome of the suit under the governing law.' And a genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the [nonmoving] party.'" *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849 (6th Cir. 2020) (citations omitted) (first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); then quoting *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016)).

The moving party bears the burden of demonstrating an absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

> If the moving party meets this burden, the burden then shifts to the nonmoving party to establish a "genuine issue" for trial via "specific facts." Additionally, the moving party is entitled to summary judgment when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Abu-Joudeh*, 954 F.3d at 840 (citations omitted) (quoting *Celotex Corp.*, 477 U.S. at 322, 324).

The Court views all of the facts in the light most favorable to the nonmoving party and draws "all justifiable inferences" in the nonmoving party's favor.

5

*Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "In other words, 'at the summary judgment stage[,] the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Jackson*, 814 F.3d at 775 (alteration in original) (quoting *Anderson*, 477 U.S. at 249).

### B. Analysis

It is unclear from the face of the pleadings whether Plaintiff intended to pursue an unlawful detention claim against Officer Jerome, or only against Officer Hanks. In light of Plaintiff's *pro se* status, however, the Court will liberally construe Plaintiff's Third Amended Complaint [63] as alleging both an excessive force claim and an unlawful detention claim against Officer Jerome. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

#### i. <u>Unlawful Detention</u>

Because Plaintiff was observed walking to a suspected narcotics transaction and waiting around while his companion purchased narcotics, DPD almost certainly had reasonable suspicion to briefly detain him and investigate whether he might also be involved. *See generally Terry v. Ohio*, 392 U.S. 1, 21 (1968). "However, even absent particularized reasonable suspicion, innocent bystanders may be temporarily detained where necessary to secure the scene of a valid search or arrest and ensure the safety of officers and others." *Bletz v. Gribble*, 641 F.3d 743, 755 (6th Cir. 2011)

(citing *Michigan v. Summers*, 452 U.S. 692, 704-05 (1981)); *see, e.g.*, *United States v. Bohannon*, 225 F.3d 615, 617 (6th Cir. 2000). Likewise, the use of handcuffs, although a separate intrusion, is reasonable where multiple individuals must be detained. *See Muehler v. Mena*, 544 U.S. 93, 99 (2005) (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). Accordingly, even if Officer Jerome could be held responsible for Plaintiff's handcuffing by association, the undisputed facts make clear that Plaintiff's brief detention was reasonable and not in violation of the Fourth Amendment.

        ii.      <u>*Excessive Force*</u>

There are two issues in dispute with respect to Plaintiff's excessive force claim: 1) whether Officer Jerome actually ran into Plaintiff and knocked him over, and 2) if so, whether Officer Jerome did so intentionally. With respect to the first issue, as described below, even viewing the facts in the light most favorable to Plaintiff—*i.e.* assuming that Plaintiff was knocked over by Officer Jerome—he would not have suffered an injury of constitutional magnitude. Accordingly, while there may be a dispute of fact on this point, the dispute is not "material." *Abu-Joudeh*, 954 F.3d at 849. With respect to the second issue, because Plaintiff has failed to present any evidence to support his allegation that Officer Jerome knocked him to the ground intentionally, the dispute of fact, although "material," is not "genuine." *Id.*

7

"[E]xcessive force claims are [typically] analyzed under the Fourth Amendment's protection against unreasonable seizures." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (citations omitted) (citing *Graham*, 490 U.S. at 394).

> However, the Fourth Amendment "reasonableness" standard does not apply to section 1983 claims which seek remuneration for physical injuries inadvertently inflicted upon an innocent third party by police officers' use of force while attempting to seize a perpetrator, because the authorities could not "seize" any person other than one who was a deliberate object of their exertion of force. Rather, constitutional tort claims asserted by persons collaterally injured by police conduct who were not intended targets of an attempted official "seizure" are adjudged according to substantive due process norms.

*Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (citations omitted) (first citing *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989); then citing *County of Sacramento v. Lewis*, 523 U.S. 833, 840-46 (1998)).

Under the substantive due process framework, courts must ask whether the "conduct of a law enforcement officer towards a citizen . . . 'shocks the conscience.'" *Claybrook*, 199 F.3d at 359 (quoting *Lewis*, 523 U.S. at 846). And where "unforeseen circumstances demand an officer's instant judgment," such as in the case of police chases, precedent dictates that an officer's conduct shocks the conscience only if force is applied "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Lewis*, 523 U.S. at 853 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

8

"[M]id-level fault" like negligence or recklessness is insufficient. *Id.*

Here, although Plaintiff was arguably seized when he was handcuffed to the fence, there is no evidence in the record to support Plaintiff's claim that Officer Jerome knocked him over intentionally (let alone maliciously or sadistically), or that Officer Jerome was attempting to "seize" him by knocking him over. On the contrary, all of the available evidence demonstrates that even if Officer Jerome did, in fact, knock Plaintiff over, he did so while trying to seize St. Charles, who had run up the driveway and into the yard. This would, at most, be reckless. Accordingly, Plaintiff was not "seized" when he was knocked over, nor was he denied substantive due process. *Claybrook*, 199 F.3d at 359; *see Lewis*, 523 U.S. at 853; *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989).

Defendant Jerome's Motion for Summary Judgment [76] is therefore, **GRANTED**, and Plaintiff's Motion for Summary Judgment [73] is **DENIED**.

### III. Remaining Motions [68, 69, 70, 72, 74]

#### A. Plaintiff's Motions to Reinstate/Restore Original Charges of Discrimination [68, 68] are Denied

On March 10, 2021, Plaintiff filed two motions to "reinstate/restore original charge of discrimination." (ECF No. 68; ECF No. 69). The Court interprets these filings as requests for leave to file an amended complaint. However, because Plaintiff offers no facts to plausibly support his claims of discrimination, amendment would be futile. Plaintiff's Motions [68, 69] must, therefore, be **DENIED**. *Rose v.*

9

*Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

### B.    Plaintiff's Motions to File Transcripts [70, 72, 74] are Granted

Around the same time, Plaintiff also filed two "Motions to File Transcripts of Witness as Privileged Trial Material" and one request to "Strike Motion to File Transcripts of Witness as Privileged Trial Material." (ECF No. 70; ECF No. 72; ECF No. 74). These filings appear to request that the Court consider certain exhibits in support of Plaintiff's Motion for Summary Judgment [73]. The Court has considered all exhibits filed by Plaintiff. To the extent that this is all Plaintiff seeks, his Motions [70, 72, 74] are **GRANTED**. To the extent Plaintiff seeks some other type of relief, his requests are **DENIED**.

## CONCLUSION

This case presents a textbook example of someone being in the wrong place at the wrong time. The evidence before the Court suggests that Plaintiff merely witnessed a crime take place, yet he was nevertheless subjected to the frightening experience of being detained by police officers and may even have been injured. Though the Court acknowledges how upsetting such an experience can be, it must grant judgment in favor of Defendants because the available evidence demonstrates beyond a genuine dispute of material fact that Plaintiff did not suffer an injury of constitutional magnitude.

Accordingly,

**IT IS ORDERED** that Plaintiff's Request for Additional Time to Serve [80] is **DENIED** and that all claims against Defendant Bryan Hanks are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant Kevin Jerome's Motion for Summary Judgment [76] is **GRANTED** and that Plaintiff's Motion for Summary Judgment [73] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions to Reinstate/Restore Original Charge of Discrimination [68, 69] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions to File Transcripts [70, 72, 74] are **GRANTED**.

**IT IS FURTHER ORDERED** that a **JUDGMENT** will be entered **CLOSING** this case.

**SO ORDERED**.

Dated: August 31, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge